# National Archives Access to Taxpayer Information

Neither the Secretary of the Treasury nor the President can permit the National Archives and Records Administration to inspect tax returns or return information pursuant to 44 U.S.C. § 2906(a)(2) for purposes of appraising the records.

May 28, 1997

MEMORANDUM OPINION FOR THE ACTING ASSOCIATE ATTORNEY GENERAL

You have asked whether we concur in the conclusion of the Civil and Tax Divisions that neither "[t]he Secretary of the Treasury [n]or the President can[ ] permit [the National Archives and Records Administration ("NARA")] to inspect [tax] returns or return information pursuant to 44 U.S.C. § 2906(a)(2) for purposes of appraising the records." [1] For the reasons set forth below, we do concur.

Section 2906(a)(2) provides that "[r]ecords, the use of which is restricted by law or for reasons of national security or the public interest, shall be inspected [by NARA], in accordance with regulations promulgated by the Administrator [of General Services] and the Archivist, subject to the approval of the head of the agency concerned or of the President." Under the Internal Revenue Code, title 26 of the U.S. Code, tax returns and tax return information "shall be confidential" and may not be disclosed by the Internal Revenue Service ("IRS") "except as authorized by [title 26]." 26 U.S.C. § 6103(a) (Supp. II 1996). Because taxpayer information is thus "restricted by law," the question presented turns on whether the Secretary of the Treasury or the President is authorized by § 2906(a)(2) to approve NARA access to such information, notwithstanding § 6103's prohibition on disclosure except where authorized by the Internal Revenue Code. There are both narrow and broad bases for concluding that they lack such authority.

1. The narrow basis relies on the limited scope of § 2906(a)(2) and therefore does not even involve consideration of the impact of § 6103. Section 2906(a)(2) is not a freestanding provision applicable to all activities undertaken by NARA under title 44. Rather, it is contained within § 2906, which is limited to inspections of agency records that NARA undertakes under chapter 29 of that title. These inspections are not for NARA's own appraisal purposes but rather are for the purpose of providing agencies with recommendations on their records management practices. The first provision of § 2906 states as follows:

> In carrying out their respective duties and responsibilities *under this chapter*, the Administrator of General Services and the Archivist (or the designee of either) may inspect the records or the records

---

[1] Memorandum for the Acting Associate Attorney General, from Loretta C Argrett, Assistant Attorney General, Tax Division, and Frank W Hunger, Assistant Attorney General, Civil Division, *Re· Tax Analysis, et al. v. IRS, et al, No. 1 97CV260 JLG (D.D C.)* at 1 (Mar 28, 1997) (attaching separate memoranda from each component providing rationale for this conclusion).

management practices and programs of any Federal agency *solely for the purpose of rendering recommendations for the improvement of records management practices and programs.* Officers and employees of such agencies shall cooperate fully in such inspections, *subject to the provisions of paragraphs (2)* and (3) of this subsection.

44 U.S.C. § 2906(a)(1) (1994) (emphasis added).

The underscored language indicates both that the NARA inspection authority under § 2906(a)(1) is limited to inspections of agency records under chapter 29 and that it is further limited by the special rule on statutorily restricted records set forth in § 2906(a)(2). NARA's mission under chapter 29 is to "provide guidance and assistance to Federal agencies with respect to ensuring adequate and proper documentation of the policies and transactions of the Federal Government and ensuring proper records disposition." *Id.* § 2904(a) (1994). To assist NARA in performing this function, § 2906(a)(1) authorizes NARA to "inspect" agency records "solely for the purpose of rendering recommendations for the improvement of records management practices and programs." Section 2906(a)(2) is a limitation on the § 2906(a)(1) authority, providing that where such inspections are of statutorily restricted information, they may take place only with the approval of the head of the agency concerned or the President.

The NARA appraisal function under chapter 33 is separate from its chapter 29 function of inspecting agency records in order to advise the agencies on their records management practices. Appraisal is the function that NARA undertakes in order to make *its own determinations* (in contrast to making recommendations to agencies) on whether agency records may be destroyed. Under chapter 33, NARA

> examine[s] the lists and schedules [of records agencies propose for destruction] submitted to [NARA] under section 3303 of this title. If [NARA] *determines* that any of the records listed in a list or schedule submitted to [it] do not, or will not after the lapse of the period specified, have sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government, [it] may . . . (1) notify the agency to that effect; and (2) *empower the agency* to dispose of those records . . . .

44 U.S.C. § 3303a(a) (1994) (emphasis added). Underscoring the decisionmaking authority NARA has under chapter 33, the statute further provides that these "[a]uthorizations granted [by NARA to agencies] shall be mandatory." *Id.* § 3303a(b).

Even if § 2906 did not by its terms limit its application to chapter 29, we believe that it would be difficult to argue that the § 2906(a)(2) authority is available with

respect to the chapter 33 authority. We have not identified any provision in chapter 33 — or anywhere else in title 44 — that links the chapter 29 inspection authority with the chapter 33 appraisal authority. For example, the provision granting NARA its appraisal authority is written in terms of "examin[ing] lists and schedules," not inspecting the records identified on these lists and schedules. *See id.* § 3303a(a).

We recognize, however, that NARA takes the view that its authorities under chapters 29 and 33 are intertwined. *See* Letter for John Dwyer, Acting Associate Attorney General, from Elizabeth A. Pugh, General Counsel, NARA, *Re: Appraisal of IRS records containing tax return and return information* at 1 (Mar. 21, 1997) ("NARA's paramount concern is to fulfill its statutory obligation to appraise and approve the disposition of IRS's records. 44 U.S.C. §§ 2906; 3303, 3303a."). Although it may be that there is sufficient past practice by NARA to constitute an administrative construction of title 44 to this effect, the memoranda that have been submitted to you do not address this point. Nonetheless, we have proceeded to assume, for the purpose of the following discussion, that the § 2906(a)(2) authority is available for appraisal purposes, so that we could consider the broader question of the interaction of that provision with § 6103 of the Internal Revenue Code.

2. Our broader basis for concurring in the conclusion reached by the Civil and Tax Divisions is the longstanding position of this Office that the general access provisions of title 44 do not override the subsequently enacted, more specific prohibition of § 6103.[2] We have written several memoranda on the relationship between NARA's access rights under title 44 and the subsequently enacted disclosure prohibition of § 6103.[3] We adhere to our established position, which was summarized in the most recent of these memoranda:

> We have thoroughly reexamined [the first two] memoranda, and we concur in their conclusion that the statutory provisions generally

---

[2] Section 6103 was adopted in 1976, as part of the Tax Reform Act of 1976, Pub L. No 94–455, § 1202, 90 Stat 1520, 1667. The authority to inspect statutorily restricted records contained in § 2906(a)(2) was first provided in 1950, by the Federal Records Act of 1950, Pub L No 754, ch 849, § 505(a), 64 Stat 578, 585. As first enacted, the inspection could take place only with the approval of the head of the agency possessing the records. *Id* The Federal Records Management Amendments of 1976 added the President as an alternative source of approval Pub L No 94–575, § 2(a)(3), 90 Stat. 2723, 2725 This was done in order to provide "for a clearly defined process in those instances where the [Archivist] and the agency head cannot agree on inspection procedures " S. Rep No 94–1326, at 10 (1976), *reprinted in* 1976 U S C C A N 6150, 6158 Thus, the addition of the President did not expand the substantive reach of § 2906(a)(2) It merely gave the approval authority under that provision to an additional person, which did not amount to a significant change because the President already possessed the authority to direct the Archivist and agency heads in their application of this provision, based on his constitutional authority to supervise and guide executive branch officials

[3] *See Transfer of Watergate Special Prosecution Force Records to the National Archives—Income Tax Information—26 U S C. §6103(a),* 1 Op O L C 216 (1977), Memorandum for Alice Daniel, Assistant Attorney General, Civil Division, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re. Applicability of the Non-Disclosure Provisions of the Tax Reform Act* (Nov 7, 1980), Memorandum for Richard K Willard, Assistant Attorney General, Civil Division, from Samuel A. Alito, Jr , Deputy Assistant Attorney General, Office of Legal Counsel, *Re· Authority of the FBI to Transfer Restricted Records to the National Archives and Records Administration* (Feb 27, 1986) ("Alito Memorandum").

> empowering the Archivist to obtain . . . records that are subject to statutory restrictions . . . do not reach tax returns and tax return information, which are strictly protected by the Tax Reform Act of 1976, 26 U.S.C. 6103. The Tax Reform Act expressly and unequivocally prohibited the disclosure of tax returns or tax return information except as authorized by that Act (26 U.S.C. 6103(a)). The legislative history of the Act makes clear that these provisions expressed a strong congressional intent to maintain very strict privacy for such information. . . . Because neither the statutory language nor legislative history of the Act provides any indication that Congress intended to allow the Archives to obtain such information . . ., we continue to believe that this specific, subsequent enactment must take precedence over the previously enacted and more general terms of the provisions relating to the Archivist. We must assume that the members of Congress who voted for the Tax Reform Act understood it to mean what the plain language of section 6103(a) says, *viz.*, that tax returns and tax return information would be disclosed only under the carefully prescribed conditions set out in the Act. We think it is unrealistic to assume that Congress intended (but neglected to mention) that such materials would also be subject to disclosure under the Archives provisions.

Alito Memorandum at 1–2 (citations and footnote omitted).

We are aware that there is dictum in a D.C. Circuit decision that suggests that the § 2906(a)(2) authority may override § 6103 because the contrary view "would effectively nullify" the provision. *See American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 76 n.75 (D.C. Cir. 1983). However, we adhere to our previously stated position that this dictum is incorrect. *See* Alito Memorandum at 2–3 ("because [the D.C. Circuit's] discussion is dictum, arose in a different context, and appears to us to be incorrect, we do not believe that it provides a sufficient basis for agreeing to a plan which, in our view, would violate important privacy rights that Congress wished to protect"). The Civil Division's memorandum contains a persuasive discussion of how giving effect to § 6103 does not render § 2906(a)(2) a nullity and how the D.C. Circuit's view fails to give effect to § 2906(b), which requires compliance "with all other Federal laws." 44 U.S.C. § 2906(b). *See* Memorandum for the Acting Associate Attorney General, from Frank W. Hunger, Assistant Attorney General, Civil Division, *Re: Tax Analysts, et al. v. IRS, et al., No. 1:97CV260 JLG (D.D.C.)* at 9 (Mar. 28, 1997).

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*